Howard E. PHILLIPS and Lois Phillips, Plaintiffs,

v.

NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN,

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY.

Howard E. PHILLIPS and Lois Phillips, Plaintiffs,

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Defendant.

Civ. A. Nos. 79–1319, 79–1320.

United States District Court, W. D. Pennsylvania.

June 24, 1981.

William G. Boyle, Joseph A. Vater, Jr., Meyer, Unkovic & Scott, Pittsburgh, Pa., for plaintiffs.

David H. Trushel, Pittsburgh, Pa., for Northwestern.

John J. McLean, Jr., Paul D. Kruper, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for Connecticut.

## OPINION AND ORDER

TEITELBAUM, District Judge.

The matter *sub judice* comes before the Court on the motions of the defendants, Northwestern National Insurance Company of Milwaukee, Wisconsin (Northwestern) and Connecticut General Life Insurance Company (Connecticut General) for judgment n. o. v. or, in the alternative, a new trial. The plaintiffs have also presented

this Court with a motion for the award of attorney's fees against Northwestern. For the reasons set forth below, all motions will be denied.

Plaintiffs brought these actions for declaratory judgment contending that Mrs. Lois Phillips received substantial injuries in an automobile accident; that she was an insured person under the individual terms of policies issued by each defendant, respectively; and that expenses incurred and to be incurred for services performed by Mrs. Olivia Adair and for the installation of an elevator in the Phillips' residence were expenses which should be paid by the defendants under the terms of the policies of insurance. Additionally by amended complaint, the plaintiffs sought to have expenses for housekeeping services performed after June 25, 1979, declared to be "replacement services loss" as that term is defined in the policy issued by Northwestern.[1] The defendants contested only whether the meaning of the language of the policies could encompass the type of services performed by Mrs. Adair and/or an elevator.

In addition to the general grounds that the verdict of the jury was not based on substantial evidence or that the verdict of the jury was against the weight of the credible evidence, the defendants have asserted three more specific sources of error: (1) the failure to join the Home Life Company of New York (Home Life) as an indispensible party; (2) several specific portions of the jury instructions, and (3) the failure to put certain special interrogatories to the jury. It is appropriate to consider these contentions sequentially.

However, before considering those averments of error, it may prove helpful to review the legal posture of this unusual litigation. The plaintiffs brought a suit for declaratory judgment, but not for money damages. The plaintiffs asked that expenses for the services of Olivia Adair and installation of an elevator be evaluated *vis a vis* the insurance policies issued by the defendants. Only a question of coverage

---

1. Certain additional claims made by Mr. Phillips were withdrawn at trial.

and not the amount of coverage was in issue. There was no question of the wording of the contract, but only a question of how that language applied in specific instances. However, since the defendants contested the type of services performed by Olivia Adair and the purpose for which the elevator was sought, factual issues aside from contract interpretation and application existed. As factual issues, these needed to be submitted to a jury for resolution. The variety of possible responses to questions designed to elicit a description of Olivia Adair's work or the purposes for which the elevator was desired required, as a practical matter, that the jury evaluate the type of work and purpose of the elevator, in light of the insurance policies. Thus the jury was asked, for example, to evaluate whether the service performed by Olivia Adair was within or without the language of the policy. The jury was not asked to construe the policy. The construction of a contract, an insurance policy, is a matter of law for the Court and in interpreting an insurance policy, the Court must construe ambiguities against the author, the insurance company.

### A.

■ The defendants now assert that Home Life was an indispensible party to this litigation whose joinder was improperly denied by the Court. After the pretrial conference had been held the defendants both moved this Court for an extension of time to join Home Life as a third party defendant. The defendants contended that the plaintiffs were insured by Home Life and that the coverage provided by Home Life would affect the potential liability of both defendants. In denying the motion, this Court was convinced Home Life was not an indispensible party.[2]

To understand why Home Life is not indispensible, it is necessary to review the insurance coverage and the particular relief sought in this litigation. When Mrs. Phillips was injured in March of 1977 she was an insured under a health and accident policy issued by Connecticut General to M–P of Maryland, Inc., and an automobile policy issued by Northwestern. Given the coordination of benefits from these two policies, Connecticut General was the primary insurer and Northwestern provided excess coverage. In July of 1979, M–P of Maryland, Inc., changed insurance carriers, substituting Home Life for Connecticut General. As part of this changeover, Connecticut General continued its responsibilities for persons with then existing injuries for one year, and Home Life did not cover such persons until their preexisting injury lasted one year. Applying this general statement to Mrs. Phillips' situation, she was afforded primary insurance coverage by Connecticut General until July of 1980, when Home Life assumed this responsibility.

The plaintiffs contended that the services provided by Mrs. Olivia Adair from 1978 through the date of trial were insured expenses, as were the costs of installing an elevator in the Phillips' residence. The defendants denied such expenses were insured. The issue to be decided was whether these costs fit within the policy language or were outside the scope of coverage. The plaintiffs did not seek a specific monetary recovery, but rather only sought to have the meaning of the words "covered expenses" in the Connecticut General policy and "medical expenses" in the Northwest policy defined *vis a vis* the expenses for Mrs. Adair's services and the elevator. From March of 1977 through July of 1980, only Connecticut General and Northwestern insured Mrs. Phillips. Thus to decide whether expenses incurred prior to July of 1980 are "covered expenses" or "medical expenses", it is necessary to consider only those policies. Whether or not Home Life provided

---

**2.** This Court offered to treat the defendants' joint motion to join Home Life as a third party defendant as one for permissive joinder and permit joinder if the defendants were willing to alleviate the prejudice to the plaintiffs by compensating them for the efforts their attorney had dutifully expended in preparing for the pretrial conference; efforts that would be rendered useless since another pretrial conference would be necessary. Though the sum involved was minimal, both defendants declined to join Home Life on that condition.

coverage after July of 1980 can have no effect on the meaning of "covered expenses" or "medical expenses". If a specific dollar recovery had been sought from Connecticut General and Northwestern, then Home Life might have been indispensible, but that is not this case.

### B.

■ The defendants also assert that specific portions of the instructions given by the Court were erroneous and prejudicial. Connecticut General takes exception to the following remarks:

> In evaluating whether expenses associated with the elevator are covered expenses, you should just consider if the elevator is a supply associated with physical therapy, or a prosthetic appliance upon the recommendation of a physician and that it was essential for care and treatment.

(Transcript pp. 270–71). Connecticut General asserts that the phrase, supply associated with physical therapy, used by the Court above, is not contained in the policy it issued and that the Court's instruction is erroneous. It is true that the phrase is not in the policy, however, the Court's instruction was not erroneous. The policy actually reads, in pertinent part:

> The term Covered Expenses means the expenses actually incurred . . . and only the extent that such services or supplies are recommended by a Physician and are essential for the necessary care and treatment of the Injury . . .
>
> . . . .
>
>     (5) charges made for . . . physical therapy; prosthetic appliances. . . .

(Exhibit 3) Under that definition covered expenses are expenses for services and supplies. Expenses for physical therapy are one example of covered expenses, although physical therapy is not defined as either a service or a supply. While the personal services of a therapist are often the bulk of physical therapy, supplies are also at times necessary. The testimony in this case indicates Mrs. Phillips used weights and cookie dough as part of her therapy. On the whole there is an element of ambiguity in the insurance policy, an ambiguity properly resolved by the Court against Connecticut General in its instructions to the jury.

■ Northwestern contends that the following instruction was error.

> You must also evaluate whether the term medical expenses encompasses those expenses associated with the installation of an elevator. In evaluating this issue, you should consider that necessary products used in transportation to medical and vocational rehabilitation services are medical expenses.

(Transcript pg. 269). Northwest contends that transportation clearly cannot mean from one floor of a house to another. That is not clear to this Court. Transportation implies movement. The elevator performs this function. Moreover, the testimony was that the kitchen represented the ideal place for Mrs. Phillips to perform the kind of therapy which would aid in the continuance of her miraculous recovery, and that the elevator was essential to safely transport her to that room.

### C.

■ The final specific suggestion of error is raised by Connecticut General. This defendant asserts that the Court's refusal to ask the jury what specific language in its policy provided coverage constitutes error. While Connecticut General complains, it has cited no cases to this Court that suggest such an open-ended interrogatory must be put to the jury. On the contrary, the Court's decision to submit only those interrogatories capable of simple and direct answers seems in accord with the preferred view. *Bertinelli v. Galoni*, 331 Pa. 73, 200 A. 58 (1938). *See generally*, 89 C.J.S. *Trial* § 531 (1981).

### D.

■ The plaintiffs have filed a motion for an award of attorney's fees from Northwest. The plaintiffs contend that because Northwest refused to acknowledge that the items claimed were covered under the insurance policy it issued, the plaintiffs are

entitled to reasonable attorney's fees pursuant to 40 Pa.Cons.Stat. § 1009.107 (Purdon). That legislation calls for the award of attorney's fees in connection with "an action for the payment of no-fault benefits." *Id.* While no doubt the plaintiffs eventually will seek to have benefits paid to them, the action before this Court was not one for payment of benefits and an award of attorney's fees is inappropriate. Moreover, even were this an appropriate case for such an award, Northwest's conduct as an excess carrier to the primary insurer who also denied coverage cannot be considered unreasonable. *See,* 40 Pa.Cons.Stat.Ann. § 1009.-107(1) and (3) (Purdon).

Having reviewed the defendants' motion for judgment n. o. v. and for a new trial and the plaintiffs' motion for an award of attorney's fees, the Court finds that all the motions must be denied. An appropriate order will issue.